IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Ronald Rice, | ) | Case No. 6:10-cv-1622-JMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| The Spinx Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's motion for summary judgment [Doc. 31]. Plaintiff brought this action alleging Defendant fired Plaintiff in retaliation for engaging in activity protected by Title VII of the Civil Rights Act of 1964. [Doc. 1 ¶¶ 11–12.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., this magistrate judge is authorized to review all pretrial matters involving litigation arising out of employment discrimination cases invoking federal statutes that proscribe unfair discrimination in employment and submit findings and recommendations to the District Court.

## BACKGROUND[1]

In January 2006, while employed as a store manager for Defendant, Plaintiff took a sexual harassment complaint from a female employee who was allegedly being harassed by a male manager at another store. [Doc. 1 ¶¶ 6–7.] Plaintiff passed on the complaint to Defendant's human resources department. [*Id.* ¶ 7.] On February 13, 2006, Plaintiff met with his Division Manager and Defendant's Vice President. [*Id.* ¶¶ 7–8.] At the meeting,

---

[1] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint, Docket Entry 1.

Plaintiff was questioned about whether he helped the alleged harassment victim pass a test the company administers at the beginning of employment. [*Id.* ¶ 7.] The Division Manager and Vice President accused Plaintiff of assisting the alleged harassment victim with the answers to the test and fired Plaintiff for allegedly assisting the alleged harassment victim with the test. [*Id.* ¶ 7–8.] Plaintiff alleges the allegations of assistance were untrue and merely a pretext to retaliate against Plaintiff for reporting another employee's sexual harassment complaint. [*Id.* ¶ 8.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the

2

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendant argues Plaintiff cannot establish a prima facie case of retaliation because Plaintiff did not engage in statutorily protected activity.  The Court agrees.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter."  42 U.S.C. § 2000d-3(a).  The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under Title VII.[2]  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000).  Under

---

[2]Plaintiff relies exclusively on the *McDonnell Douglas* burden-shifting scheme in this case.  The Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof."  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).  First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).  Alternatively, a plaintiff "may 'proceed under [the *McDonnell Douglas*] "pretext" framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'"  *Id.* (quoting *Hill*, 354 F.3d at 285).  Here, Plaintiff does not attempt to survive summary judgment using direct or circumstantial evidence of retaliation.  Instead, he relies exclusively on the *McDonnell Douglas* burden-shifting scheme to argue he can establish a prima facie case of retaliation and that Defendant's articulated legitimate, non-discriminatory reason for terminating Plaintiff is a pretext for retaliation.  [*See* Doc. 36.]

the burden-shifting framework, an employee must first prove a prima facie case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (setting the framework for a discrimination, as opposed to a retaliation, claim). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *Id.* at 804; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate "(1) [he] engaged in a protected activity, (2) the employer acted adversely against [him], and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218. A plaintiff has engaged in protected activity if "he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Thus, "[p]rotected activities fall into two distinct categories: participation or opposition." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause"). The Supreme Court has interpreted the opposition clause to extend to "an employee [who takes] a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Crawford*, 555 U.S.

at 277.  Further, the Court has stated that "a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion."  *Id.*  However, "whether an employee's 'opposing' conduct is active or passive, it must still be specific in nature," *Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 484 (D. Del. 2009), and the broad definition of "oppose" announced in *Crawford* "does not extend to cases where employees do not communicate their views to their employers through purposive conduct," *Pitrolo v. Cnty. of Buncombe, N.C.*, No. 07-2145, 2009 WL 1010634, at *3 n.6 (4th Cir. Mar. 11, 2009) (citing *Crawford*, 555 U.S. at 283 (Alito, J., concurring)).

Under the participation clause, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII."  *Laughlin*, 149 F.3d at 259.  Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII—are those "essential to the machinery set up by Title VII."  *Id.* at 259, 259 n.4 (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)) (internal quotation marks omitted) (citing 42 U.S.C. § 2000e-3(a)); *see also Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999) (refusing to read a reasonableness standard into the participation clause, a "conclusion [that] is consistent with the purpose of the participation clause: 'Maintaining unfettered access to statutory remedial mechanisms.'" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997))).

On the other hand, a plaintiff has not engaged in protected activity if he has merely discharged the duties of his job.  *See McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486–87 (10th Cir. 1996) (stating, in an FLSA case, that "it is the assertion of statutory rights ( *i.e.*, the *advocacy* of rights) by taking some action adverse to the company . . . that is the

6

hallmark of protected activity" (emphasis in original)); *see also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 627 (5th Cir. 2008) ("We find the logic of *McKenzie* to provide a correct and balanced approach in requiring an employee to 'step outside his or her role of representing the company . . . .'" (quoting *McKenzie*, 94 F.3d at 1486–87)); *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004) (same); *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998) (distinguishing the employee's actions in the Title VII case before the court from the plaintiff's actions in *McKenzie* and finding the employee's refusal to implement a discriminatory company policy was an action outside the normal managerial role); *Hill v. Belk Stores Servs., Inc.*, No. 3:06-cv-398, 2007 WL 2997556, at *1 (W.D.N.C. Oct. 12, 2007) ("[A]ctions within the scope of an employee[']s duties are not protected for the purpose of Title VII.").  Consequently, a plaintiff cannot make out a prima facie case of retaliation if the alleged protected activity was within the scope of his duties.

Here, Plaintiff did not engage in protected activity under the opposition or participation clause, and the actions Plaintiff claims are protected activity were within the scope of Plaintiff's employment.  The relevant portions of Plaintiff's deposition testimony are as follows:

> A: I was instructed to page the Human Resources number. They had a pager that you called after hours and such.
> Q: So you paged Human Resources on Sunday night?
> A: Yes, sir.
> Q: And did you reach anybody?
> A: I did.
> Q: Who did you reach?
> A: I think I reached Tracie Lilly.  It would have been whoever was on call that day.  I told them what was going on and was asked to file a, to get a report from them and turn it into the office and they would take care of it.  They would look at it Monday.
> Q: And did you prepare a written report?

A: I took her report.

Q: From Heather Bilyeau?[3]

A: Yes, sir.

Q: And what did you do with it?

A: It was taken to the office.

Q: Did you put it in the night drop box?

A: I believe I did.

...

Q: Do you know if Heather Bilyeau took her allegations of harassment directly to Human Resources at any time?

A: Sir, as far as I know, the report which I turned in for her, as far as I know, was the first time.

Q: But under the policy, Bilyeau should have taken her report directly to Human Resources, right?

A: Under the policy.

Q: Correct?

A: Yes, sir.

Q: And to make sure I've got it right. You called Tracie Lilly's pager and Tracie Lilly called you back on that Sunday night that Bilyeau made the complaint to you, correct?

A: Yes, sir.

Q: And when you reported Bilyeau's complaint to Tracie Lilly in Human Resources, you were following Company policy, weren't you?

A: At that time, yes, sir.

Q: It was your responsibility under Spinx's policy to report any allegations of harassment to Human Resources when they came to your attention, wasn't it?

A: Yes, sir.

Q: You didn't witness what happened between Bilyeau and Brennan?

A: No, sir.

Q: And you didn't have any personal knowledge about the complaint against Brennan that Heather Bilyeau made, did you?

A: No, sir.

Q: You only knew what Bilyeau told you, right?

A: Right.

Q: You weren't a witness for Bilyeau.

A: No, sir.

---

[3] Heather Bilyeau—or Heather Bilyeu—was the alleged sexual harassment victim. [Doc. 31-1 at 2; Doc. 36 at 1.]

8

Q: And you didn't testify for Bilyeau, did you?
A: About her harassment?
Q: Right.
A: No, sir.
Q: You weren't interviewed as part of the investigation that Spinx did into Bilyeau's complaint, were you?
A: No, sir.
Q: You didn't answer any questions about Bilyeau's complaint, you just submitted it in writing in the drop box, right?
A: Right.
Q: And after that initial report, which you made by putting it in the night drop box, you didn't gather any evidence for the investigation did you?
A: No, sir.
Q: You wouldn't call Bilyeau your friend, right?
A: No, sir.
Q: She's just a fellow employee?
A: Yes, sir.
Q: Bilyeau never filed any charge with the EEOC, did she?
A: Sir, I couldn't pretend to tell you what Bilyeau did after I was separated.

[Doc. 31-2 at 40–44.]  Plaintiff concludes his actions demonstrate he engaged in protected activity,[4] but Defendant concludes this testimony demonstrates Plaintiff did not engage in

---

[4] Plaintiff asserts that his "activities in contacting Lilly, helping Bilyeu complete the harassment complaint, and delivering the harassment complaint rise to the level of 'protected activity' under the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended."  [Doc. 36 at 12–13.]  In response to Defendant's contention that Plaintiff did not engage in protected activity, Plaintiff merely asserted Defendant parsed words and made a puzzling argument [Doc. 36 at 10–12]; Plaintiff provided no reasoning to support these assertions and did not direct the Court to any evidence in the record that would demonstrate a genuine issue of material fact remains as to whether Plaintiff engaged in protected activity.  *Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue); *Ross*, 759 F.2d at 365 (stating that conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . .").

9

protected activity—i.e., the parties apparently do not dispute the facts surrounding Plaintiff's alleged protected activity. Accordingly, the Court has applied the law to these undisputed facts.

As the undisputed facts establish, Plaintiff did not make a charge, testify, assist, or participate in any manner in an investigation, proceeding, or hearing under Title VII. [Doc. 31-2 at 41, 43–44; Doc. 37 ¶ 9; Doc. 37-5 ¶ 3]; *see Laughlin*, 149 F.3d at 259 (stating that the participation clause requires participation in an *ongoing* investigation or proceeding). Further, as Defendant asserts, the undisputed facts demonstrate Plaintiff merely acted in a neutral, rather than oppositional, manner because Plaintiff did not undertake any purposive or specific conduct to oppose any unlawful employment practice. [Doc. 31-2 at 41, 43–44.] Finally, the undisputed facts establish Plaintiff was acting within the scope of his duties by reporting the sexual harassment claim to Defendant's human resources department. [Doc. 31-2 at 41–42; Doc. 31-6 at 13.] Consequently, the Court recommends Defendant's motion for summary judgment be granted because Plaintiff did not engage in protected activity and, therefore, cannot establish a prima facie case of retaliation.[5]

---

[5] Because the Court has determined Plaintiff cannot establish he engaged in protected activity, and thus cannot establish a prima facie case of retaliation, the Court declines to address Defendant's remaining arguments.

## <u>RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 31] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

November 10, 2011
Greenville, South Carolina