IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Ronald Rice, | ) | Civil Action No. 6:10-01622-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| The Spinx Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Ronald Rice ("Plaintiff") filed this action against his former employer, The Spinx Company, Inc. ("Defendant"), alleging that he was retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. This matter is before the court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which motion was filed on July 21, 2011. (ECF No. 31.) Plaintiff filed opposition to Defendant's motion on August 18, 2011, to which Defendant filed a reply on August 26, 2011. (ECF Nos. 36 & 42.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, the matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pretrial handling. On November 10, 2011, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendant's motion for summary judgment be granted. (ECF No. 54.) Plaintiff filed objections to the Report and Recommendation on December 5, 2011, to which Defendant filed a reply on December 21, 2011. (ECF Nos. 59 & 60.) For the reasons set forth below, the court **ACCEPTS** the Report and Recommendation of the Magistrate Judge and **GRANTS** Defendant's motion for summary judgment.

1

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed in the Report and Recommendation. The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate. The court adopts this summary as its own, and will only reference facts pertinent to this analysis of Plaintiff's claims.

On August 7, 2003, Defendant hired Plaintiff to manage one of its convenience stores.[1] (ECF No. 31-2, p. 17.) Heather Bilyeau ("Bilyeau") came to Plaintiff's store looking for a job, but there were no openings. (ECF No. 31-2, p. 24.) Plaintiff referred Bilyeau to a store with available positions that was managed by Don Brennan ("Brennan"). After Bilyeau was hired to work in Brennan's store, she appeared at Plaintiff's store one evening complaining that Brennan had sexually harassed her. (ECF No. 31-2, pp. 37-38.) Upon hearing Bilyeau's allegations of sexual harassment, Plaintiff called his supervisor, Stoney Yearwood ("Yearwood"), to discuss how Plaintiff should handle the matter. (Id. at pp. 39-40.) Yearwood advised Plaintiff to contact human resources. (Id. at pp. 40-41.)

Plaintiff spoke with Tracie Lilly ("Lilly") in human resources and told her that Bilyeau had made an oral complaint of sexual harassment. (Id. at p. 41.) Lilly told Plaintiff to have Bilyeau prepare a written statement, which statement should be forwarded to her. (ECF No. 31-5, p. 14.) Plaintiff had Bilyeau write her statement and Plaintiff placed the statement in the night drop box at the corporate office. (ECF No. 31-2, p. 41.)

Lilly investigated Bilyeau's claims with assistance from the Division Manager for the store where Bilyeau worked, Andrew Heubner ("Heubner"). (ECF No. 31-5, pp. 15-17.) Lilly

---

[1] Plaintiff previously had worked for Defendant in a similar capacity from May 28, 1999 to September 14, 2001. (ECF No. 31-2, pp. 14-15.)

and Heubner interviewed Bilyeau by telephone on January 27, 2006.  (ECF No. 31-7, ¶ 9; ECF No. 31-5, p. 17.)  During this telephone interview, Bilyeau, in response to a question regarding who hired her, said she interviewed with Brennan, but completed her paperwork and took the SIGMA test at the store Plaintiff managed.[2]  (ECF No. 31-7, ¶ 10; ECF No. 31-5, pp. 12-13.)  Bilyeau then volunteered that Plaintiff had helped her with the SIGMA test, and that she would not have passed the test without Plaintiff's help.  (Id.)  Lilly informed the Division Manager of the store managed by Plaintiff, Greg Butler ("Butler"), about Bilyeau's disclosure that Plaintiff had assisted her with taking the SIGMA Test.  (ECF No. 31-5, p. 19.)

On February 13, 2006, Plaintiff was called in to meet with Butler, and Chief Operating Officer Greg Minton ("Minton").  (ECF No. 31-2, pp. 26-27.)  Butler asked Plaintiff if he had assisted Bilyeau in any way in passing the SIGMA test.  (Id. at p. 27.)  Plaintiff ultimately admitted assisting Bilyeau in taking the test.  (ECF No. 31-3, pp. 12-14.)  Butler told Plaintiff that he no longer trusted Plaintiff, and, as a result, terminated Plaintiff's employment.  (ECF No. 31-2, p. 32.)

After his termination, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC).  (ECF No. 1, ¶ 13.)  On March 23, 2010, the EEOC issued Plaintiff a "Notice of Right to Suit" letter.  (Id.)  Thereafter, on June 23, 2010,

---

[2]  Applicants for employment are required by Defendant to take an Employee Screening Questionnaire (ESQ), called the SIGMA test, which predicts a potential employee's propensity for positive and negative work behaviors.  (ECF No. 31-5, pp. 5-6, 13.)  The SIGMA test is a fifth to seventh grade level assessment tool and qualified applicants should be able to take the test without assistance.  (ECF No. 31-5, p. 9.)  Managers are specifically instructed not to help applicants with the SIGMA test, because assistance would render the results inaccurate.  (ECF No. 31-5, p. 24; ECF No. 31-3, pp. 16-17.)  Assisting an applicant on the SIGMA test is considered by Defendant to be falsifying or misrepresenting test results.  (ECF No. 31-7, ¶ 13.)

Plaintiff filed this lawsuit alleging retaliation under Title VII.[3]  (See ECF No. 1.)  On October 15, 2010, Defendant answered the complaint denying Plaintiff's allegations of retaliation.  (ECF No. 6.)   After the completion of discovery, Defendant moved on July 21, 2011 for summary judgment pursuant to Fed. R. Civ. P. 56.  (ECF No. 31.)  Plaintiff filed opposition to Defendant's motion for summary judgment on August 18, 2011, to which Defendant filed a reply in support of summary judgment on August 26, 2011.  (ECF Nos. 36 & 42.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    Standard

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[3] The court notes that there is a difference of ninety-three days between March 23, 2010 and June 23, 2010.  Under Title VII, a plaintiff must file her suit within ninety days from the date the EEOC gives notice of the right to sue.  42 U.S.C. § 2000e-5(f)(1).

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

Under Title VII, employers may not retaliate against an employee, or a former employee, because the employee has either "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000-e-3(a). To prevail on a retaliation claim under Title VII, a plaintiff may offer direct evidence of retaliation. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence showing "(1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action." See Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once the plaintiff establishes a prima facie case of retaliation in violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's legitimate, non-discriminatory reason is pretextual. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001).

**B.     Plaintiff's Retaliation Claims**

The Magistrate Judge found that Plaintiff failed to establish a prima facie case of retaliation under Title VII because he could not show that he was fired for engaging in a statutorily protected activity. (ECF No. 54, p. 4.) The Magistrate Judge determined that Plaintiff's report of Bilyeau's sexual harassment claim to Defendant's human resources department was within the scope of his employment and was not protected under neither the

6

opposition clause or participation clause of Title VII. (Id. at p. 7.) Moreover, the Magistrate Judge agreed with Defendant that the undisputed facts demonstrate Plaintiff "merely acted in a neutral, rather than oppositional, manner because Plaintiff did not undertake any purposeful or specific conduct to oppose any unlawful employment practice." (Id. at p. 10.) As a result, the Magistrate Judge recommended granting Defendant's motion for summary judgment.

Plaintiff contends that the Magistrate Judge erred in finding that his actions were not "statutorily protected activity." Plaintiff argues that his actions in "participating in the taking, relaying orally and then formally filing Bilyeau's complaint were 'protected activity' under Title VII." (ECF No. 59, p. 9.) As a result, Plaintiff asserts that he has met the protected activity prong of a prima facie case of retaliation and Defendant's motion for summary judgment should be denied. (Id. at pp. 9-10.)

Protected activity under Title VII comes in two varieties: "opposition" and "participation." The opposition clause protects employees where their acts do not fall within the formal process of adjudicating an employee's discrimination claim. The employee must oppose practices that are unlawful under Title VII, or must oppose practices that the employee "reasonably believes" are unlawful under Title VII. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406-407 (4th Cir. 2005). To determine whether an employee's "opposition activity" comes under the protection of Title VII, courts employ a test that balances "the purpose of [Title VII] to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999). "As long as an employee complains to his or her employer or participates in an employer's informal

7

grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause." Id. Opposition can include an employee's use of informal grievance procedures, staging informal protests, or simply voicing one's opinion to bring attention to an employer's alleged discriminatory activities. Laughlin, 149 F.3d at 259.

The "participation clause" refers to the phrase in 42 U.S.C. § 2000e-3 that protects employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." See 42 U.S.C. § 2000e-3(a); see also Glover v. S.C. Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999). "Activities that constitute participation are . . . (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." Laughlin, 149 F.3d at 259.

After careful review of the record, the court concurs in the Magistrate Judge's conclusion that Plaintiff did not engage in protected activity under the opposition clause or participation clause. Plaintiff's actions - calling Defendant's human resources department about Bilyeau's complaint of sexual harassment, orally relaying Bilyeau's complaint to a human resources representative, helping Bilyeau complete Defendant's harassment complaint form, and physically transporting the complaint form to Defendant's human resources department - fail to establish that Plaintiff either complained about an unlawful employment practice, participated in a grievance procedure, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.[4] The evidence of record is that Plaintiff

---

[4] Plaintiff only submitted Bilyeau's written statement alleging harassment to Defendant's human resources department. (ECF No. 31-2, pp. 43-44.) In reporting Bilyeau's claims, Plaintiff admitted that he was simply following Defendant's harassment policy. (ECF No. 31-2, pp. 42-43.) Plaintiff further admitted that he had no personal knowledge about the complaint that Bilyeau made against Brennan. (ECF No. 31-2, p. 43.) Plaintiff did not witness the harassment and stated that he only knew what Bilyeau told him. (Id.) As such, Plaintiff did not act as a witness for Bilyeau, testify on her behalf, or submit to an interview as part of the investigation that Defendant conducted into Bilyeau's allegations of sexual harassment. (Id.) Plaintiff further did not gather any information for the investigation after submitting


did not engage in any of these protected activities under Title VII.  (See ECF No. 31-2, pp. 41-44; ECF No. 37, ¶ 9; ECF No. 37-5, ¶ 3.)

The court further agrees with the Magistrate Judge's finding that Plaintiff's actions were within the scope of his employment.[5]  In this regard, courts regularly hold that actions within the scope of an employee's duties are not protected for the purpose of Title VII.  See Claudio-Gotay v. Bection Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004) (to engage in protected activity, the employee must step outside his or her role of representing the company); McKenzie v. Renberg's Inc., 94 F.3d 1478, 1487 (10th Cir. 1996) (an employee who, in her capacity as personnel manager, informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations, did not engage in activity protected under FLSA's anti-retaliation provision; such actions were completely consistent with her job duties); see also Hill v. Belk Stores Serv., 2007 WL 2997556, at *1 (W.D.N.C. Oct. 12, 2007) (holding that plaintiff's actions are not legally protected because he acted only within the scope of his duties as a safety program officer, and actions within the scope of an employee's duties are not protected for the purpose of Title VII); Vidal v. Ramallo Bros. Printing, Inc., 380 F. Supp. 2d 60, 62 (D.P.R. 2005) (a human resources director did not engage in protected activity when he informed the company's president and vice-president that he was initiating a sexual harassment investigation against them).

Based upon the foregoing, the court finds that Plaintiff's objections to the Magistrate Judge's Report and Recommendation are without merit.  Accordingly, Plaintiff cannot establish

---

Bilyeau's initial complaint.  (ECF No. 31-2, p. 44.)  Finally, Plaintiff did not know if Bilyeau ever even filed a charge of discrimination with the EEOC or South Carolina Human Affairs Commission.  (Id.)

[5]  Plaintiff expressly admitted that he was acting within the scope of his duties by reporting Bilyeau's sexual harassment claim to Defendant's human resources department.  (See ECF No. 31-2, pp. 42-43.)

a prima facie case of retaliation under Title VII and, therefore, his claim for retaliation fails as a matter of law.[6]

### III.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment, ECF No. 31, of The Spinx Company, Inc.  The court accepts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED**.

*J. Michelle Childs*

J. MICHELLE CHILDS
UNITED STATES DISTRICT JUDGE

March 2, 2012
Columbia, South Carolina

---

[6] Defendant also contends that Plaintiff cannot establish a causal link between Plaintiff's alleged protected activity and an adverse employment action. The court declines to address that contention in this order because the determination has been made that Plaintiff cannot establish a prima facie case of retaliation under Title VII.